# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| KYE JACQUE,<br><br>      Plaintiff,<br><br>vs.<br><br>POWER ENGINEERING & MANUFACTURING, LTD., As Administrator of the Power Engineering & Manufacturing, Ltd. Health Care Plan,<br><br>      Defendant. | No. C04-2030<br><br>**ORDER** |

_____

This matter comes before the court pursuant to Defendant Power Engineering & Manufacturing, Ltd.'s July 15, 2005 motion for summary judgment (docket number 17). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (docket number 7). For the following reasons, the defendant's motion is granted.

## I. INTRODUCTION

### Factual and Procedural Background

The plaintiff in this matter, Kye Jacque, is suing the defendant, Power Engineering & Manufacturing, Ltd. (PEM), for health care coverage that he alleges he is entitled to as an eligible employee under PEM's health care coverage plan. The plaintiff recounts the injury giving rise to the need for such coverage, in his Complaint, as follows:

> Late on the evening of July 12, 2002, [the plaintiff] was returning home from a meeting with his investment group and came upon an unmarked pile of gravel which caused his vehicle to veer down into the drainage ditch running parallel with the county road. [The plaintiff] proceeded in the ditch to

1

> a point where he felt he could safely drive up the embankment and out onto the road . . . [i]n driving up the embankment, however, the automobile driven by [the plaintiff] rolled over onto its top and back down into the ditch in the process of which [the plaintiff's] neck was broken . . . . [The plaintiff's] injuries left him essentially paralyzed from the neck down with some limited movement in his shoulders.

The plaintiff sought health care coverage the above stated injuries and complications, under PEM's health care plan.

PEM's health care plan includes an exclusion provision, which reads in relevant part as follows:

> General Limitations: The following exclusions and limitations apply to expenses incurred by all Covered Individuals: . . . 43. Charges for accidental bodily Injury sustained or Illness contracted as a result of alcohol or drug abuse.

The PEM health care plan further provides for discretion on the part of the Fiduciary or Administrator in the administration of PEM's health care plan, as follows:

> Named Fiduciary and Plan Administrator. . . . The Administrator has the sole authority and responsibility to review and make final decisions on all claims to benefit hereunder.

The plaintiff is suing the defendant for the denial of health benefits under the theory of breach of contract as well as pursuant to Iowa Code § 91A.3.[1]

---

[1] Iowa Code § 91A.3 states, in relevant part:
> An employer shall pay all wages due its employees, less any lawful deductions . . .

Iowa Code § 91A.2 defines "wages," in relevant part, to include the following:

> c. Any payments to the employee or to a fund for the benefit of the employee, including but not limited to payments for medical, health, hospital . . . which are due an employee under an agreement with the employer or under a policy of the employer.

2

The defendant filed a notice of removal from Black Hawk County District Court to the United States District Court for the Northern District of Iowa on May 25, 2004 (docket number 2), premising federal jurisdiction on the assertion that the plaintiff's claim for unpaid benefits "either states a claim under, or states a claim which is preempted by, the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §[§] 1132(a) and 1144." The plaintiff did not resist removal.

## II. CONCLUSIONS OF LAW

### A. Summary Judgment Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)). The nonmoving party is entitled to all reasonable inferences that can be drawn from the evidence without resort to speculation. Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-moving party's position

will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. Id.

## B. The Defendant's Motion for Summary Judgment

The defendant moves for summary judgment, arguing first that the plaintiff's claims, brought under the theory of breach of contract and pursuant to Iowa Code § 91A, are preempted by federal law, specifically ERISA. Second, the defendant argues that when the court properly considers the plaintiff's state-law based claims as that of an ERISA claim, the court will find that summary judgment in favor of the defendant is appropriate.

### 1. Federal Preemption

The defendant asserts that "[w]hile [the plaintiff] has not specifically pled an ERISA claim, Count I of his removed petition does seek to recover benefits that he claims were due under the terms of PEM's ERISA plan." The defendant argues, accordingly, that the plaintiff's claim for benefits is preempted by ERISA.

ERISA is a remedial statute designed to protect the interests of employees in pension and welfare plans and to protect employers from conflicting and inconsistent state and local regulation of such plans. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990). ERISA, in part, "empowers 'a participant or beneficiary' of an ERISA plan to bring a civil action 'to recover benefits due to him under the terms of his plan.'" Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 931 (8th Cir. 1991) (quoting 29 U.S.C. § 1132(a)(1)(B)). "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" Aetna Health Inc. v. Davila, 124 S. Ct. 2488, 2495 (2004) (citing 29 U.S.C. § 1001(b)). ERISA's purpose is "to provide a uniform regulatory regime over employee benefit plans," and to this end, "ERISA includes expansive preemption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"

4

Aetna Health Inc. v. Davila, 124 S. Ct. at 2495 (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981). ERISA's preemption clause declares that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health Inc. v. Davila, 124 S. Ct. at 2495 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54-56 (1987); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143-45 (1990)).

ERISA preempts state laws insofar as those laws relate to an "employee benefit plan." ERISA distinguishes between employee benefits and employee benefit plans; ERISA governs only benefit plans. See Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11 (1987). An "employee welfare benefit plan" is described as "any plan, fund or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries [specified benefits]." 29 U.S.C. § 1002(1). ERISA regulates only those "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." Fort Halifax Packing Co. v. Coyne, 482 U.S. at 11.

Common law contract and tort claims which relate to the administration of an employee benefit plan covered by ERISA are preempted by ERISA. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62 (1987) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987)). Iowa Code § 91A, as pleaded in Count II of the plaintiff's Complaint, "is not a statute which is excepted from coverage of ERISA."[2]

---

[2] As the defendant pointed out in its motion for summary judgment, it is questionable as to whether the plaintiff's claim for health care coverage can appropriately
(continued…)

Davis v. Ottumwa Young Men's Christian Association, 438 N.W.2d 10, 13 (Iowa 1989). Rather, § 91A, entitled the "Iowa Wage Payment Collection Law . . . deals exclusively with employer/employee relationships." Davis v. Ottumwa Young Men's Christian Association, 438 N.W.2d at 13. Likewise, the plaintiff's breach of contract claim, set forth in Count I of the Complaint and premised on PEM's denial of healthcare benefits, is not excepted from preemption. See Fink v. Dakotacare, 324 F.3d 685, 689 (8th Cir. 2003).

The court finds that the plaintiff's state law claims, Count I sounding in breach of contract and Count II made pursuant to Iowa Code § 91A, are preempted by ERISA because they concern the administration of an employee healthcare coverage plan that is covered by ERISA.[3] The plaintiff does not contend that PEM's health care plan is not a "plan, fund or program . . . established or maintained by [the plaintiff's employer, PEM] . . . [and] to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants [PEM employees] or their beneficiaries [specified benefits]," in this case, healthcare benefits. 29 U.S.C. § 1002(1). Accordingly, ERISA preemption applies.

---

[2](…continued)
be brought pursuant to Iowa Code § 91A. In Shaw v. McFarland Clinic, P.C., the Eighth Circuit Court of Appeals held that a similar claim for denial of health care coverage was not within the purview of the Iowa Wage Payment Collection Act, because payments for medical expenses to be made directly to the health care provider do not constitute "wages" as defined by Iowa Code § 91A.2(7)(c)) and (d). Shaw v. McFarland Clinic, P.C., 363 F.3d 744 (8th Cir. 2004). In any event, assuming without deciding that the plaintiff's claim is properly brought pursuant to Iowa Code § 91A, such a claim is preempted by ERISA. Antolik v. Saks Incorporated, 278 F. Supp. 2d 997, 1005 (S.D. Iowa Aug. 13, 2003) (holding that if the plaintiff's claim has direct connections to a plan covered by ERISA, the claim is necessarily preempted by ERISA.)

[3] Specifically in regard to the plaintiff's contract claim, because it is clear that such claim arises from the denial of health care coverage benefits under PEM's group health plan, ERISA preemption applies. Fink v. Dakotacare, 324 F.3d at 689.

## 2. The Plaintiff's ERISA Claim

The defendant moves for summary judgment as to the plaintiff's ERISA claim for health care benefits. Specifically, the defendant asserts that "the evidence before the PEM administrator," when determining whether benefits were owed,

> indicated that [the plaintiff's] claim for benefits was premised on an injury that he suffered . . . when he lost control of his vehicle . . . in a manner that caused [the plaintiff's vehicle] to turn over onto its top in the ditch . . . and a lab report indicating that a blood sample was taken from [the plaintiff] more than three hours after the accident was found to contain 0.177 g/100 ml units of alcohol.

The defendant contends that based on this evidence, PEM's administrator appropriately denied benefits under the health plan's exclusion for "charges for accidental bodily Injury sustained . . . as a result of alcohol or drug abuse." The defendant points out that in the plaintiff's request for review from the administrator's initial denial of benefits, the plaintiff asserted "only that 'the accident and resulting injuries were not the result of either alcohol or drug abuse,'" but the plaintiff did not dispute the result of the blood alcohol test, nor did the plaintiff provide any other information in support of his claim to the administrator. Accordingly, the defendant contends that the plan administrator's decision to deny benefits, based on the administrator's decision that the plaintiff's accident and injuries were the result of alcohol abuse, was reasonable and not an abuse of discretion.

The plaintiff did not resist the defendant's motion for summary judgment.[4] A review of the Complaint indicates that the plaintiff attributes his losing control of his vehicle and veering into the ditch to an "unmarked pile of gravel." The plaintiff further indicates, in his Complaint, that he proceeded in the ditch "to a point where he felt he

---

[4] Pursuant to Local Rules 56.1 and 6.1, the plaintiff's resistance to the defendant's motion for summary judgment was due August 8, 2005. A review of the CMECF record indicates that notice of the defendant's motion for summary judgment having been filed was provided to the plaintiff on July 15, 2005. As of the date of this Order, the plaintiff has not resisted the defendant's motion for summary judgment.

could safely drive up the embankment," but that in so doing, his car rolled over and his neck was broken, resulting in the injuries and complications here at issue. The record indicates that counsel for the plaintiff sent a letter to Sharon Meyer, Medical Claims Supervisor, concerning the denial of benefits. The letter, dated December 7, 2002, states in relevant part, the following:

> We have a copy of your letter . . . denying medical benefits for the injuries sustained in [the plaintiff's] accident. While you cite a provision from the policy you do not specifically state the reasons for your denial. The accident and resulting injuries were not the result of either alcohol or drug abuse, and we request that you review your denial. We are also asking for the specific reasons for the denial and the basis thereof.

In response to the plaintiff's letter and inquiry, Unit Operations Manager Daniel Waldbillig wrote a letter to counsel for the plaintiff on December 23, 2002. The letter read, in pertinent part, as follows:

> We are in receipt of your letter dated December 7, 2002 . . . [The plaintiff] is covered under the [PEM] Self Insured Health plan. The health plan has an exclusion for injuries sustained as a result of alcohol abuse . . . . According to the medical records reviewed it indicates that [the plaintiff] was intoxicated upon arrival to the hospital. The investigative report provided by the Bremer County Sheriff's office also indicates that Mr. Jacque had a blood alcohol level of 0.1777% at the time of the accident. Based upon the medical records and the blood alcohol level of the individual, the charges would be excluded based on the above provision.

"ERISA itself does not specify a standard of review" for plan administrator's decisions, "however, the Supreme Court has held that a reviewing court should use a de novo standard of review unless the plan gives the 'administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 640-41 (8th Cir. 1997) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Wilson v. Prudential Ins. Co. of Am., 97 F.3d 1010, 1013 (8th Cir. 1996)). If the plan gives such discretionary authority,

8

as is indisputably the case here[5], the court is to review the plan administrator's decision for abuse of discretion. Cash v. Wal-Mart Group Health Plan, 107 F.3d at 641 (citing Donaho v. FMC Corp., 74 F.3d 894, 897 (8th Cir. 1996) (abrogated on other grounds).

The proper inquiry under the abuse of discretion standard is whether "the plan administrator's decision was reasonable; i.e. supported by substantial evidence." Cash, 107 F.3d at 641 (citing Donaho, 74 F.3d at 899). The court is not free to reject the administrator's discretionary decision simply because the court is in disagreement with the decision. Id. (citing Donaho, 74 F.3d at 899). The administrator's decision will be deemed reasonable if "a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." Id. (citing Id.). "If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." Id.. Review is further limited to "evidence that was before" the administrator at the time that the decision to deny benefits was made. Id. (citing S.W. Areas Health & Welfare Fund, 18 F.3d 556, 560 (8th Cir. 1994)). The administrator's decision "need not be the only sensible interpretation" of the plan, "so long as [the administrator's] decision offers a reasoned explanation, based on the evidence, for a particular outcome." Donaho, 74 F.3d at 899.

"In evaluating whether a plan administrator's fact-based . . . determinations are reasonable, courts should look to whether the decision is supported by substantial evidence." Donaho, 74 F.3d at 900 (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citing Consolidated Edison Co., 305 U.S. at 229). Substantial evidence requires "more than a scintilla but less than

---

[5] The PEM health care plan explicitly grants discretionary authority to the "Named Fiduciary" and "Plan Administrator," see factual and procedural background above.

9

a preponderance." Id. (citing Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992) (internal citation omitted).

The court finds that the PEM plan administrator's decision to deny benefits under PEM's health care plan, pursuant to the exclusion for injuries caused by alcohol abuse, was a reasonable decision. Based on the evidence before the administrator at the time that the decision to deny benefits was made, including the blood-alcohol report indicating that the plaintiff was intoxicated at the time that the accident occurred, the court finds that the administrator's decision was both reasonable and supported by substantial evidence. A "reasonable person could have reached a similar decision, given the evidence before him." See Cash, 107 F.3d at 641 (citing Donaho, 74 F.3d at 899). While the court is mindful of the seriousness of the plaintiff's injuries arising from the accident, the plaintiff has set forth no evidence, and the record does not otherwise provide any such evidence, to indicate that the administrator committed an abuse of discretion in determining that benefits should be denied based on the plan's alcohol abuse exception.

Upon the foregoing,

IT IS ORDERED that the defendant's motion for summary judgment (docket number 17) is granted. This matter is dismissed. The Clerk of Court shall enter judgment for the defendants.

August 22, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT